810 So.2d 563 (2002)
Phillip PENALVER, Appellant,
v.
Kelly COLUMBO, Appellee.
No. 2D01-207.
District Court of Appeal of Florida, Second District.
March 6, 2002.
*564 Virginia R. Vetter of Vetter & Hunter, Tampa, for Appellant.
Michael C. Tice, Ft. Myers, for Appellee.
NORTHCUTT, Judge.
Phillip Penalver and Kelly Columbo are the parents of a six-year-old daughter. Penalver challenges the circuit court's award of child support to Columbo on numerous grounds. We find no error in the court's computation of the parties' incomes, and affirm those issues on appeal without comment. But the court did err in failing to consider Penalver's obligations for his and the child's health insurance and his state income taxes when it computed the amount of child support he owed. We reverse and remand for further proceedings on this point. Penalver also contends that the court erroneously awarded pre-judgment interest on retroactive child support. We have reviewed the final judgment and find that the court did not make such an award. However, the court may have incorrectly set the amount owed, so we remand for further proceedings on that issue as well.
Penalver has contributed to his daughter's support since her birth in 1995. In June 1997, he filed a complaint to establish visitation. Columbo then filed a counter-complaint seeking to establish paternity and shared parental responsibility and asking the court to set the amount Penalver should pay for child support and health insurance. The parties successfully mediated all questions but the financial ones.
After trial on the remaining issues, Columbo's accountant prepared child support guidelines worksheets for each year from 1995 to 2000, based on the court's findings concerning the parties' incomes and the deductions permitted. The court used the 2000 worksheet to determine Penalver's continuing child support obligation. It computed the amount of retroactive child support using the other worksheets.
Turning first to the court's computation of Penalver's continuing child support obligation, we note that it correctly factored in his payments for his daughter's health insurance under section 61.30(8), Florida Statutes (2000). But it did not allow deductions for the cost of Penalver's own health insurance or for the California state income tax he paid. Child support in a paternity action is determined under section 61.30. §§ 61.30(17); 742.031(1), Fla. Stat. (2000). Section 61.30(3) lists allowable deductions from gross income, which *565 include amounts paid for state income tax and health insurance, excluding coverage for the minor child. § 61.30(3)(a), (e). See Knight v. Knight, 746 So.2d 1117, 1120 (Fla. 4th DCA 1999); Somma v. Vesely, 687 So.2d 936, 937 n. 2 (Fla. 4th DCA 1997).
Concerning the health insurance, the court stated "these figures are just all over the place. They're not regular and I'm not sure what's actually being provided, so I'm not going to give credit for any of that." But Penalver testified without contradiction that his present cost for health insurance was $585 every two months. While, as we will discuss presently, there was some confusion over what he had paid for his health insurance in the past, his testimony about his present expense was unrebutted. In computing Penalver's continuing child support obligation, the circuit court should have permitted a deduction from his gross income for the cost of his insurance. Likewise, there was no dispute that Penalver paid California state income taxes. While he did not have the actual figure he owed in 2000, that expense could have been estimated based on the wages the court found he earned. Again, this amount should have been deducted from his gross income. We reverse the court's determination of Penalver's continuing child support obligation and remand for recalculation of the guidelines support amount taking these deductions into consideration.
A similar problem arose in the court's computation of the retroactive child support due. The child support worksheets prepared for the years 1995 through 1999, like the 2000 worksheet, did not show deductions from Penalver's gross income for his own health insurance and for state income taxes. § 61.30(3)(a), (e). We agree with the circuit court that the evidence concerning payments for Penalver's health insurance was rather confusing. But even Columbo's accountant said Penalver made payments totaling $561 in 1995 and $2100 in 1998. Penalver's exhibits indicated he paid $300 in 1997, $1800 in 1998 and $2648 in 1999. We do not direct the court to use any particular number, but Penalver should be given some credit for his own health insurance costs in those years. Likewise, he should be credited for state income tax payments. Columbo introduced Penalver's California state income tax returns for 1995, 1996 and 1997, which showed payments of $.00, $589, and $1356, respectively. Penalver's exhibits showed he paid $2392 in California state income tax in 1999. Because these amounts were undisputed, the court should deduct them from Penalver's gross income when calculating the amount of retroactive child support he owes.
The 1995 through 1999 worksheets also did not include the amounts Penalver had paid for his daughter's health insurance in those years. § 61.30(8). Again, these amounts were disputed. But Columbo's own accountant found evidence that Penalver had paid $456 in 1997, $730 in 1998, and $97 in 1999. Penalver claimed to have paid $1570 in 1995, $921 in 1996, $756 in 1997, $730 in 1998, and $682 in 1999.
Accordingly, we reverse the amount of retroactive child support awarded and remand with directions for the circuit court to determine what deductions should be allowed under section 61.30(3) and what amounts should be factored in under section 61.30(8). When the scoresheets from the past years have been recalculated, the court can redetermine the retroactive child support.
Finally, Penalver contends that the circuit court should not have awarded prejudgment interest on the retroactive *566 child support. However, our reading of the final judgment confirms that the court only awarded postjudgment interest.[1] Columbo's accountant prepared a worksheet which showed the retroactive child support due based on the 1995 through 1999 child support guidelines worksheets. The total amount due was $42,394. She subtracted the payments Penalver made during those years, $24,006, and arrived at a balance due of $18,388. The accountant then computed prejudgment interest, in the amount of $2442.99, added that to the previous balance-due figure, and arrived at an amount due of $20,830.99. But the trial court did not use these figures. First, in its findings of fact it stated that Penalver was due a credit for child support payments totaling $24,096.[2] Then, it established retroactive child support in the amount of $42,394, which it stated "shall bear interest at the legal rate." As can be seen by comparing this figure to the worksheet, the court used the amount owed before prejudgment interest was added. It then awarded postjudgment interest on the amount due, which was proper. We note however, that the court likely did not intend to award interest on the full amount of $42,394, when it had previously found that Penalver should be credited for child support payments he made during the years 1995 through 1999. When the court recomputes the retroactive child support due pursuant to this opinion, it should then subtract the payments Penalver made before the date of the final judgment, and award postjudgment interest on the net balance.
Affirmed in part, reversed in part and remanded.
ALTENBERND and COVINGTON, JJ., Concur.
NOTES
[1] Because we are remanding this case for recalculation of child support, we note that it would have been improper for the circuit court to award prejudgment interest on the retroactive child support. The final judgment mischaracterized the retroactive support as an "arrearage." An arrearage occurs when a court orders support, but a party does not pay it. Prejudgment interest is due from the date of the last support payment made under the court order until the date of the arrearage judgment. See Applegate v. Applegate, 566 So.2d 865, 866 (Fla. 1st DCA 1990). The final judgment on appeal here was the first time a court ordered Penalver to pay any amount of child support; he had not failed to pay any previously-ordered sums. An award of prejudgment interest on the retroactive child support would have been erroneous.
[2] This figure may be a mistake in addition. The worksheet showed that Penalver had paid $24,006 in the years 1995 through 1999.